O. P. Leonard v. Commissioner. Margery Leonard (Mrs. O. P. Leonard) v. Commissioner.
Leonard v. Commissioner
Docket Nos. 557 and 558.
United States Tax Court
1945 Tax Ct. Memo LEXIS 189; 4 T.C.M. (CCH) 540; T.C.M. (RIA) 45177; May 21, 1945
*189 In 1936, petitioners, husband and wife, transferred community property to the husband as trustee for their four minor children. The trusts were irrevocable and for long terms. Only under certain named conditions could the trustee in his sole discretion distribute any income prior to the beneficiary attaining age 21 and no such distributions were made in any of the taxable years. Distribution of certain percentages of the trust estate was mandatory when beneficiary attained the ages of 21 and 25. Between the ages of 30 and 50, the trustee could distribute the balance of the trust or hold it, depending upon the beneficiary's demonstrated ability to manage, control and conserve. After beneficiary reached age 30, if trustee decided to hold, monthly or quarterly distribution of income was mandatory. Termination was mandatory when beneficiary reached age 50. In case of death of a beneficiary the remainder went to others than the grantors. No powers were reserved to alter or amend the trusts in any way. Provision was made for additional trustees. In the taxable years the beneficiaries were all minors. The net income of each of the trusts was accumulated by the trustee in behalf of the respective *190 beneficiaries. Held, no part of the income of the four trusts is taxable to the grantors under sections 22 (a), 166 or 167 of the Revenue Act of 1938 and of the Internal Revenue Code. J. M. Leonard, et al., 4 T.C. 1271, (promulgated April 30, 1945) followed. Charles P. Swindler, Esq., 1266 National Press Building, Washington, D.C., for the petitioners. Paul E. Waring, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion These consolidated proceedings involve identical deficiencies in income tax determined by respondent against each petitioner on the community property basis for the calendar years 1938, 1939 and 1940, in the amounts of $2,010.14, $6,281.34 and $11,546.34, respectively. In statements attached to the deficiency notices, the respondent adjusted the net community income as disclosed by each petitioner's returns for the calendar years 1938, 1939 and 1940, by adding to such net community income the amounts of $14,728.08, $27,110.16 and $43,635.16, respectively, which adjustments he explained in six separate explanations and *192 which we consolidate into one, as follows: It is held that the net income of the trusts listed below constitutes income taxable as community income to Mr. O. P. Leonard and Mrs. O. P. Leonard, grantors of such trusts: [1938]
[1939]
[1940]
Martha Jane Leonard Trust
$ 3,682.02
$ 6,777.54
$10,908.79
Obie Paul Leonard Trust
3,682.02
6,777.54
10,908.79
Margery Ann Leonard Trust
3,682.02
6,777.54
10,908.79
Robert Wooldridge Leonard Trust
3,682.02
6,777.54
10,908.79
Total
$14,728.08
$27,110.16
$43,635.16
By appropriate assignments of error petitioners contest the above adjustments to their net community income. In the above-mentioned statements the respondent also made several other adjustments to the net community income, but these adjustments are not contested and will be given effect in a recomputation under Rule 50. Findings of Fact Many of the facts have been stipulated. The stipulation is incorporated herein by reference. Petitioners, O. P. Leonard, born on September 4, 1898, and Margery Leonard, born on August 22, 1903, are husband and wife, both residing during the taxable years 1938, 1939 and 1940 and at all times material *193 to these proceedings at Fort Worth, Texas. They were married on May 12, 1925, at Dallas, Texas. Each filed a separate income tax return for each of the years 1930 to 1940, inclusive, on the community property basis with the Collector of Internal Revenue for the Second District of Texas, and reported large amounts of community income thereon. On April 1, 1931, Leonard Bros. was organized and incorporated under the laws of the State of Texas, with an outstanding capital stock of 90,000 shares common with a par value of $10 per share. During the period April 1, 1931 to December 31, 1940, inclusive, this corporation was engaged in diverse merchandising, both wholesale and retail, dealing in clothing, food stuffs, drugs, furniture, etc. During this period the capital stock and surplus (including reserve for income taxes), the gross sales, officers' salaries paid to J. M. Leonard and O. P. Leonard and the net income of this corporation as reported on its income tax returns were as follows: Capital Stock
Gross
Officers' Salaries Paid
Net
Year
and Surplus
Sales
J. M. Leonard
O. P. Leonard
Income
1931
$1,124,714.27
$4,974,012.69
$22,500.00
$22,500.00
$199,356.70
1932
1,322,514.66
5,405,142.15
30,000.00
30,000.00
224,251.49
1933
1,663,067.60
5,715,053.61
30,000.00
30,000.00
382,502.49
1934
1,957,627.11
6,279,319.42
30,000.00
30,000.00
423,732.25
1935
2,057,058.78
6,316,139.92
30,000.00
30,000.00
333,024.26
1936
2,131,869.59
6,921,599.80
30,000.00
30,000.00
390,108.13
1937
2,120,349.00
7,397,329.06
30,000.00
30,000.00
283,408.30
1938
2,316,481.50
7,817,810.70
30,000.00
30,000.00
398,434.20
1939
2,456,025.16
8,128,633.82
30,000.00
30,000.00
450,394.19
1940
2,603,387.78
8,999,710.05
42,000.00
42,000.00
514,214.02
*194 During the years 1935 to 1940, inclusive, the capital stock of Leonard Bros. was registered in the names of the persons of trusts, and dividends were paid by Leonard Bros. to the registered owners thereof, as follows: Close of Year 1935
1935
Close of Year 1936
1936
Name of Stockholder
Number of
Dividends
Number of
Dividends
Shares Owned
Received
Shares Owned
Received
J. M. Leonard
48,801
$ 78,081.60
48,801
$141,522.90
O. P. Leonard
40,099
64,158.40
34,099
108,487.10
Carl Bruner
1,100
1,760.00
1,100
3,190.00
Obie Paul Leonard Trust
1,500
1,950.00
Robert Wooldridge Leonard Trust
1,500
1,950.00
Margery Ann Leonard Trust
1,500
1,950.00
Martha Jane Leonard Trust
1,500
1,950.00
90,000
$144,000.00
90,000
$261,000.00
Close of Year 1937
1937
Close of Year 1938
1938
Name of Stockholder
Number of
Dividends
Number of
Dividends
Shares Owned
Received
Shares Owned
Received
J. M. Leonard
49,350
$123,377.50
49,350
$ 74,026.50
O. P. Leonard
34,649
86,622.50
31,049
46,573.50
Obie Paul Leonard Trust
1,500
3,750.00
2,400
3,600.00
Robert Wooldridge Leonard Trust
1,500
3,750.00
2,400
3,600.00
Margery Ann Leonard Trust
1,500
3,750.00
2,400
3,600.00
Martha Jane Leonard Trust
1,500
3,750.00
2,400
3,600.00
M. S. Leveridge
1
1
90,000
$225,000.00
90,000
$135,000.00
*195 Close of Year 1939
1939
Close of Year 1940
1940
Name of Stockholder
Number of
Dividends
Number of
Dividends
Shares Owned
Received
Shares Owned
Received
J. M. Leonard
49,350
$123,377.50
30,000
$ 90,003.00
O. P. Leonard
31,049
77,622.50
27,049
81,147.00
Obie Paul Leonard Trust
2,400
6,000.00
3,400
10,200.00
Robert Wooldridge Leonard Trust
2,400
6,000.00
3,400
10,200.00
Margery Ann Leonard Trust
2,400
6,000.00
3,400
10,200.00
Martha Jane Leonard Trust
2,400
6,000.00
3,400
10,200.00
M. S. Leveridge
1
Mary Leonard Trust #1
3,333
9,999.00
Miranda Leonard Trust #1
3,333
9,999.00
Martha Leonard Trust #1
3,333
9,999.00
Mary Leonard Trust No. 2
3,117
9,351.00
Miranda Leonard Trust No. 2
3,117
9,351.00
Martha Leonard Trust No. 2
3,117
9,351.00
E. J. Henderson
1
90,000
$225,000.00
90,000
$270,000.00
At the close of the years 1935 to 1940, inclusive, the shares of capital stock of Leonard Bros. were voted at annual stockholders' meetings, as follows: Name of Stockholder
1935
1936
1937
1938
1939
1940
J. M. Leonard
48,801
48,801
49,350
49,350
49,350
30,000
J. M. Leonard as Trustee
19,350
O. P. Leonard
40,099
40,099
34,649
32,649
31,049
27,049
O. P. Leonard as Trustee
6,000
8,000
9,600
13,600
All others
1,100
1,100
1
1
1
1
90,000
90,000
90,000
90,000
90,000
90,000
*196 On December 31, 1936, and prior to any gifts by him and Margery Leonard of any shares of that stock, O. P. Leonard was the registered owner of 40,099 shares of the capital stock of Leonard Bros., which shares were community property of O.P. and Margery Leonard under the laws of the State of Texas. On December 31, 1936, O. P. Leonard and his wife, Margery Leonard, created separate trusts for the benefit of each of their four children, Obie Paul, Robert Wooldridge, Margery Ann and Martha Jane, respectively, born on May 16, 1926, April 15, 1928, August 27, 1931 and January 4, 1934, and respectively aged 10 years, 8 years, 5 years and 2 years when said trusts were created on December 31, 1936. The said trusts were known as the Obie Paul Leonard Trust, Robert Wooldridge Leonard Trust, Margery Ann Leonard Trust and Martha Jane Leonard Trust. The trust indentures were identical in all the material provisions, except for the name of the beneficiary. The material provisions of the Obie Paul Leonard Trust were as follows: "The State of TexasCounty of Tarrant] Know All Men by These Presents: "That we, O. P. Leonard and Margery Leonard, husband and wife, of Fort Worth, Texas, for a valuable *197 consideration to us paid by said O. P. Leonard, as Trustee, and in consideration of the trusts, uses and purposes hereinafter set forth, have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey unto said O. P. Leonard, as Trustee, and in trust, for the uses and purposes and to be held, invested, managed and finally disposed of by him or by his successor Trustees as hereinafter directed, the following described personal property, to-wit: "1500 Shares of the common stock of Leonard Bros., a corporation, of the par value of $10.00 each, evidenced by Certificate No. 34, of even date herewith, which grantors have caused to be issued to O. P. Leonard, Trustee for Obie Paul Leonard. "TO HAVE AND TO HOLD the above described certificate of stock unto said O. P. Leonard, as Trustee, in trust, for the uses and purposes herein set forth, and unto his assigns, and unto the successor Trustees, if any, forever. "The Trustee shall immediately take and hold possession and control of the above described shares of stock in Leonard Bros., at this time evidenced by the certificate above described, with full power and authority at any time and from time *198 to time to sell said shares of stock or any number of them for such consideration and on such terms as he may determine, with such full and complete power and authority to invest the proceeds of any such sale or sales, as well as any and all other funds that may at any time be on hand during the existence of the trust, in such bonds, promissory notes or other evidences of debt secured or unsecured, or in such other securities, or in real or personal property of any kind, at such prices and under such conditions as may be determined by the Trustee in his absolute and sole discretion. The Trustee shall not be required to dispose of said shares of stock or any portion thereof or of any other item or items of property at any time hereafter belonging to this trust which may not be generally or perhaps by strict law regarded as proper investments for trust funds. The Trustee shall use his own judgment and discretion about what kind or character of investments he shall retain or shall make from time to time with trust funds, notwithstanding any rule of law to the contrary in cases where the trust agreement does not stipulate with respect thereto; and the Trustee is hereby expressly relieved *199 of all liability to the beneficiary or beneficiaries hereof, or to anybody else, because of any loss or losses that may develop as a result of his complying with this direction that he use his own judgment, rather than be governed by said rule of law with respect to investment of trust funds. No bond shall be required of the Trustee or of his successor Trustee, if any, (unless required as hereinafter stipulated) and, having acted in good faith, none of them shall be liable for losses resulting from errors of judgment or from the exercise of his or their discretion with respect to the kind and character of investments made for or held by the trust at any time or from time to time. "The Trustee shall have authority to pay all taxes accruing on the trust property from time to time, to employ attorneys, agents and others to assist him in the management and protection thereof, to insure property when deemed necessary and to collect or compromise the proceeds of such insurance, to file, prosecute, defend and/or compromise suits and controversies, and generally the Trustee shall have all other powers that an absolute owner has with respect to the control, management, disposition, investment *200 and preservation of the trust funds and of the different items of property that may belong to the trust from time to time; and the special enumeration of powers herein granted shall in no event be construed as excluding any of the general powers herein conferred on the Trustee. "If the Trustee, O. P. Leonard, shall die before the termination of this trust, or should resign, or for any reason become incapable of discharging the duties of Trustee, in any such event we here name and appoint his brother, J. Marvin Leonard, and said Margery Leonard Co-Trustees to act in his place and stead, vesting in them as such all of the powers, rights and immunities herein granted to O. P. Leonard. If before the termination of the trust O. P. Leonard should die or resign or become incapable of discharging his duties as Trustee, and if at such time J. Marvin Leonard should be deceased or should refuse to act as Trustee or should be incapable of so acting, then Carl P. Bruner and the Fort Worth National Bank are here named as Successor Trustees herein, in lieu of O. P. Leonard or of J. Marvin Leonard, as the case may be, to act jointly with Margery Leonard as Trustees of the trust. If at that time *201 or thereafter Margery Leonard or Carl P. Bruner should be deceased, or should refuse to act or to longer act as Trustee, the Bank shall thereafter act as Co-Trustee with the other, or as sole Trustee, as the case may be. However, the grantors herein expressly reserve the right and power in O. P. Leonard, or in the event of his death then of Margery Leonard, by appropriate declaration in writing executed and acknowledged by him or her and attached to the original hereof, to limit the broad powers or any Trustee or Trustees hereof other than grantors with respect to the kind and character of securities or other property in which the funds and assets of the trust may be invested and reinvested by any such successor Trustee or Trustees, and they likewise so reserve in themselves the right and power, and if both are deceased then in J. Marvin Leonard, to be exercised and evidenced as stipulated above with respect to investments, or naming and appointing, before them [sic] begin to act, alternative or successor corporate or individual Trustees in lieu of the Fort Worth National Bank and J. Marvin Leonard and Carl P. Bruner, or of any of them and likewise or requiring a reasonable surety *202 company bond (at the expense of the trust) of any successor Trustee or Trustees. Wherever the word Trustee is used herein, it shall be construed as meaning Trustees when more than one is acting. If it should come about that there are three Trustees hereunder, then with respect to all matters they may act by majority vote or agreement. "This trust is created for the benefit of our minor child, Obie Paul Leonard, and for the benefit of its successor in interest, if any, in the sole discretion of the Trustee, to be exercised from time to time, $100 or less or nothing per month from the funds or property of the trust estate may be used for the maintenance, upkeep, education and general welfare of said beneficiary until it receives a part of the Corpus of the trust property as hereinafter provided. This maximum of $100 shall not be absolute, but is arrived at by us on the basis of the present purchasing power of the American dollar. If such purchasing power should materially decrease, then the Trustee may use a relatively larger portion of the trust funds for the purposes mentioned, having authority to increase or decrease the amount so used, if any, at the Trustee's sole discretion, *203 always having in mind the needs of the child and its source or sources of support otherwise while a minor. And in event of an emergency at any time with respect to the child, caused by illness or other misfortune, the Trustee may devote to its welfare, temporarily or permanently while a minor, such an additional sum of money, monthly or otherwise, from the trust funds as may be determined by the judgment and discretion of the Trustee. Any sums of money so used for the benefit of the child may be expended directly by the Trustee or may be paid over by the Trustee to its mother or to any other person who may be in control and possession of the child and taking care of it, and in no event shall it be necessary that a guardian be appointed by the courts to receive and expend such funds. The use of the funds so made by the Trustee shall be binding on the child and on any and all others concerned. "When our said child arrives at the age of 21 years the Trustee shall pay over to it 25 per cent. of the money and property then belonging to the trust, principal and any accumulated income, whereupon title thereto shall automatically divest out of the Trustee and vest in the child free of the *204 trust. This percentage of the trust property may be paid to the child in cash or in property on hand or partly each, and in case it is so delivered in property or partly in property the value of the items thereof and of that remaining in the trust shall be determined solely by the Trustee, and such determination shall be binding on the child. The Trustee shall continue to hold, own, manage, invest and reinvest the remaining 75 per cent of such property until said child reaches the age of 25 years, at which time 1/3 of the remaining property then on hand, principal and accumulated earnings, shall be delivered to the child, and thereupon title to such 1/3 shall automatically divest out of the Trustee and vest in the child as its absolute property. No payments of income or from the corpus of the trust property during this four-year period shall be made to the child but all of it shall be allowed to accumulate. Thereafter the Trustee shall continue to hold, manage, invest and reinvest the remainder of the trust property until the child reaches the age of 30 years, paying it no part of the income meantime. If at that time, in the sole discretion and judgment of the Trustee, the child has *205 demonstrated its willingness and ability to reasonably manage, control and conserve the property, in such case the Trustee shall at once deliver to it all of the remaining property belonging to the trust, and title there-to shall vest in the child as its absolute property, and the trust shall terminate. But if at such time, in the sole judgment and discretion of the Trustee, the child, because of its habits, inclinations, or for other reasons, has not demonstrated its ability and willingness to reasonably conserve and manage and use the property, the Trustee shall retain title thereto and continue to hold, manage, invest and reinvest same as theretofore, until the child shall have reached the age of 50 years, or until it shall have convinced the Trustee prior to that time that it has become capable and competent and willing to receive and conserve the property, at which time, whether at the age of 50 years or before, the remainder of the property shall be delivered to the child, and title thereto shall completely vest in it, and the trust shall terminate. Meantime, after the child reaches the age of 30 years and before the termination of the Trust, the Trustee shall monthly or quarterly *206 pay over to it the entire net income of the trust property. "If our said child should die before it has received all of the property of the trust as provided above, leaving a child or children of its body, then such child or children shall become the beneficiary of this trust in lieu of our deceased child, exactly as it is provided herein with respect to the latter, except that the trust shall terminate and all property thereof shall be delivered to the grandchild, if only one, when it reaches the age of 21 years, or else shall be divided among the grandchildren, if more than one, when the younger or youngest reaches that age. But if our said child should under said circumstances die without leaving such child of its body, then one-half of the property then in the trust shall be at once delivered to and become the absolute property of the surviving wife (husband) or [sic] our deceased child, and its surviving brothers and sisters shall become the beneficiaries of the other half thereof, share and share alike among them, the child or children of any of them deceased at such time to take what the deceased parent would have taken if living, and at the time. In such event each such *207 surviving brother or sister of the beneficiary hereof shall receive his or her portion of the property at the times and upon respectively reaching the ages herein stipulated with respect to the original beneficiary hereof, meantime receiving any portion of his or her pro rata of the monthly payments from the trust fund as the Trustee may deem advisable, and as provided herein with respect to the original beneficiary. "Regular annual audits of the affairs of this trust must be made. During the time that O. P. Leonard, Marvin Leonard or Margery Leonard may be acting as Trustee or Co-Trustees such audits may be made by any individual, whether public accountant or not. Any successor Trustees to those named above, however, must have such audits made by a reputable Firm of Public Accountants. Copies of all audits shall be preserved as a part of the records of the trust. Any executed copy of every audit shall be promptly furnished to the beneficiary or beneficiaries of the trust. "[We here omit the spendthrift provisions contained in the trust indenture.] "If the Fort Worth National Bank or other corporation should become a Trustee hereunder, and if before or after it becomes Trustee *208 it should be consolidated with or merged into any other bank or bank and trust company, or other corporation or should any other institution take over or succeed to its principal assets and business, then such consolidated or merged or other corporation or institution shall thereupon immediately and automatically succeed to and have all of the rights, duties, powers, discretion and immunities herein conferred on the Fort Worth National Bank. "IN TESTIMONY WHEREOF, witness our hands at Fort Worth, Texas this the 31st day of December, 1936, at 4:25 P.M. O. P. LEONARD MARGERY LEONARD" To each of said trusts O. P. Leonard and Margery Leonard transferred by gift stock of Leonard Bros., 1,500 shares at the date of the creation of the trusts in 1936, having a fair market value of $34,500; 500 shares in 1937, having a fair market value of $11,500; 400 shares in 1938, having a fair market value of $9,200; and 1,000 shares in 1940, having a fair market value of $27,500. This stock was valued for gift tax purposes at $23 per share in 1936, 1937 and 1938 and at $27.50 per share in 1940. The aggregate fair market value of stock transferred to each of the trusts was $82,700 at the dates *209 of transfer. All of said stock was community property of the grantors under the laws of the State of Texas. Timely Federal gift tax returns were filed by petitioners for the years 1936, 1937, 1938 and 1940, in which gifts made to each of the four trusts were reported and Federal gift taxes due thereon were duly paid. Title to the assets of the four trusts was taken in the name of O. P. Leonard, Trustee. O. P. Leonard had possession and custody of the indentures of trust and of the assets of the four trusts at all times, which were kept separate from his individual assets. One bank account was maintained with the Fort Worth National Bank for the four trusts, each trust having a one-fourth interest therein. All checks issued against this bank account were signed by O. P. Leonard, Trustee. No part of the funds of the four trusts was used or expended for the maintenance, education or support of any of the beneficiaries of the trusts. Petitioners, as parents, at all times provided for such education, maintenance and support from their personal funds, and they were amply able to so provide. Petitioners were worth between $750,000 and $1,000,000 during the years 1938, 1939 and 1940. *210 Separate books of account were maintained for each of the four trusts and were correctly kept. An employee of Leonard Bros. kept the books of the trusts and received no compensation therefor other than his salary from Leonard Bros. The trust books were annually audited by a certified public accountant. At no time could petitioners, as grantors or otherwise, alter, amend, revoke or terminate any of the four trusts prior to the time fixed therein, nor could either of them vest title to the corpus thereof in themselves, or either of them. They reserved no power or right to direct that the income or funds of the trusts shall go to beneficiaries other than those named in the trusts. Each trust was, from the date of its creation, administered by the trustee strictly as provided by each of the declarations of trust. All net income of the four trusts has been accumulated by the trustee and no distributions of income or corpus have been made, all of said beneficiaries still being under 21 years of age, and neither grantor has received any part thereof as an individual. No part of the property of any trust has been applied to the payment of premiums upon policies of insurance upon the lives *211 of the grantors, and upon the creation of the trusts and the delivery of all gifts thereto, the grantors as individuals parted with all right, title, and interest in and to such gifts and to the income and corpus of each of the trusts. Petitioners, as grantors, created the four trusts to secure the economic independence of the four beneficiaries; so that funds of the trusts might be more conservatively invested than petitioners were accustomed to invest their own; and so that the trust funds might be devoted to the use and benefit of their four children at a time when petitioners were able to provide cash with which to pay gift taxes incident to transfers to the trusts, in lieu of possible estate and inheritance taxes in the event of their demise. Protective claims for refund of the Federal income taxes paid by the trustee for each of the four trusts have been filed solely to protect his rights as such trustee in the event that the income of these trusts be ultimately held to be taxable to petitioners-grantors individually. Agreements have been signed and filed with the Commissioner to the effect that if it be held that the income of these trusts is not taxable to petitioners-grantors, *212 then the said claims for refund will be withdrawn. Petitioners-grantors have agreed to indemnify the Commissioner with respect to the said claims for refund and to execute any further consents or agreements of indemnity or otherwise required by section 134 (b) (2) of the Revenue Act of 1943, or by the lawful regulations promulgated in pursuance of that section. The net income of each trust was included in fiduciary income tax returns filed by the trustee for each of the trusts for the years 1938, 1939 and 1940, and the tax as found by the respondent on said returns was duly paid. Opinion BLACK, Judge: The only question for our determination is whether the income of the four trusts for the years 1938, 1939 and 1940 is taxable to the grantors thereof under either sections 22 (a), 166 or 167 of the Revenue Act of 1938 (as to the year 1938) and of the Internal Revenue Code (as to the years 1939 and 1940), or is taxable to the trusts under section 161 of the Revenue Act of 1938 and of the Internal Revenue Code. This is substantially the same question as was recently decided by us in J. M. Leonard, et al., 4 T.C. 1271, promulgated April 30, 1945. O. P. Leonard and J. *213 M. Leonard are brothers and the principal officers of the corporation, Leonard Bros. mentioned in our findings. Each brother and his respective wife created trusts for their respective minor children. The trust indentures executed by petitioners here are somewhat shorter than those involved in the J. M. Leonard case, but the material provisions of all of the trusts involved here and in the J. M. Leonard case are substantially the same. The parties here, in their briefs, make the same identical arguments and cite the same cases as were made and cited, respectively, in the J. M. Leonard case. Under these circumstances we know of no reason why our holding here should not be the same as it was in J. M. Leonard, et al. supra. We, therefore, hold as we did in the J. M. Leonard case that the grantors of the four trusts in question are not taxable on any part of the income of the trusts under sections 22 (a), 166 or 167, supra, and that the income thereof is taxable to the trusts under the provisions of section 161 of the Revenue Act of 1938 and of the Internal Revenue Code. Decisions will be entered under Rule 50.